IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID A. CAMPBELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN E. POTTER, POSTMASTER )<br>GENERAL, UNITED STATES )<br>POSTAL SERVICE, )<br>)<br>Defendant. ) | 1:04CV989 |

MEMORANDUM OPINION

BEATY, District Judge.

Plaintiff David A. Campbell ("Plaintiff") brings this case against his employer, Defendant John E. Potter as the Postmaster General of the United States Postal Service ("Defendant") alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981. This matter is presently before the Court on Defendant's Motion for Summary Judgment [Document #18]. For the reasons discussed below, the Court concludes that Defendant's Motion for Summary Judgment should be GRANTED IN PART AND DENIED IN PART.

I. FACTUAL BACKGROUND

In the present case, Plaintiff brings claims for race discrimination and retaliation based

on three separate incidents: (1) an invoice he received for $319.15 from the postal service for amounts he was overpaid in 2000; (2) his supervisor's alleged failure to adjust his routes to add new addresses in a timely manner; and (3) his supervisor's requiring him to regularly work on his Saturday relief day, allegedly in retaliation for filing an EEO complaint. Plaintiff began working for the Postal Service as an auxiliary rural carrier in the High Point Post Office in November 1998. In February 2000, Plaintiff became a regular rural carrier assigned to "Route 18." At that time, Route 18 was designated as a "J" route, which entitled Plaintiff, under the terms of his union agreement, to a relief day every other week. Plaintiff's supervisor at this time was Sharon Baldwin.

On December 20, 2000, Plaintiff received an invoice from the Accounting Service Center of the United States Postal Service indicating that he owed the Postal Service $319.15. Plaintiff contends that he met with his supervisor (Ms. Baldwin) and a union representative, but could not understand what the invoice was for. Plaintiff further contends that Ms. Agnes Whately, a white employee, received an invoice around that time but did not have to pay it. However, Plaintiff concedes that he does not know what Ms. Whatley's invoice was for or why she did not have to pay it. Defendant has presented evidence to establish that Plaintiff's invoice resulted from a re-evaluation of all rural carriers' routes pursuant to a Memorandum of Understanding between the United States Postal Service and the National Rural Letter Carriers' Association, and represented amounts Plaintiff was overpaid in 2000 as determined and invoiced by the Central Accounting Office based on the Memorandum of Understanding. According to Defendant, Plaintiff's invoice

2

was one of approximately 2,500 invoices generated centrally as a result of the postal union agreement, and did not involve Plaintiff's supervisors at all. In contrast, the invoice received by Ms. Whately was a local recalculation of wages to correct an administrative error that occurred at the High Point post office, and was resolved internally. Plaintiff does not dispute Defendant's explanation as to this invoice.

At about the same time, from the end of 2000 through May of 2001, Plaintiff requested that Ms. Baldwin recalculate the stops on his route to add new addresses as necessary. On February 28, 2001, Plaintiff gave Ms. Baldwin 36 new stops that he requested be added to his route. Plaintiff contends that the new stops were not added in a timely manner. Plaintiff contends that this failure to adjust his routes occurred again in November 2001, when he again asked that his route be recalculated to add new stops. Plaintiff contends that two other employees, Bobby Singh and Ann Dorsick, had their routes adjusted in a timely manner. However, Plaintiff admits that he does not know if those employees requested route adjustments or how quickly their route adjustments were made. Instead, Plaintiff assumes that their routes must have been adjusted because he did not hear them complaining about their routes. (See Pl.'s Dep. at 38 - 39.) Plaintiff's supervisor at the time, Ms. Baldwin, contends that when Plaintiff gave her his February 28, 2001 list, all of his requested eligible stops had already been sent in to the district office, except for seven or eight new stops, and those seven or eight were sent in within a month. Ms. Baldwin also avers that Plaintiff's adjustments were sent in more often than any other carriers'. Plaintiff's subsequent additions were also addressed within a few weeks, including

3

by having a supervisor ride with him and send in new addresses, although some of his requested stops were not yet "live" addresses eligible to be added. Although Plaintiff does not know whether any other employees' routes were updated more frequently, Plaintiff contends that the delay in adjusting his routes was the result of race discrimination.

On June 16, 2001, Plaintiff's route was adjusted and was changed from a "J" route to a "K" route. At or around that time, Ms. Toni Agner became Plaintiff's supervisor. Plaintiff contends that under the terms of his union agreement, he was entitled to a relief day each week after his route became a "K" route. Plaintiff contends that his designated relief day was Saturday, and that he was able to take his relief day on Saturday from June 2001 through November 2001. However, as a result of an incident that occurred on July 30, 2001, Plaintiff received a 7-day suspension from Ms. Agner. Plaintiff contacted an EEO counselor on August 3, 2001 with regard to this suspension, and filed a formal EEO complaint on October 11, 2001. Plaintiff does not bring any claims in the present case challenging the 7-day suspension. Instead, in the present case, Plaintiff contends that he was retaliated against after filing the October 11, 2001 EEO complaint. Specifically, Plaintiff contends that beginning November 10, 2001 through May 11, 2002, Ms. Agner required Plaintiff to work 24 out of 27 times on his Saturday relief day. Plaintiff also contends that on 16 of those days, a "sub" familiar with Plaintiff's route was available. In response, Defendant contends that Plaintiff was required to work on Saturdays because there were too few subs in the High Point Office at that time, and there were no subs available who knew Plaintiff's route. On April 25, 2002, Plaintiff filed a second EEO complaint related solely

4

to this issue. After filing the EEO complaint, a sub was assigned to Plaintiff's route and Plaintiff was no longer generally required to work on his relief day.

Defendant has moved for summary judgment, contending that Plaintiff failed to exhaust his administrative remedies with respect to the December 2000 invoice and the failure to recalculate his route in February 2001, for which he did not file an EEO complaint. With respect to the race discrimination claims, Defendant also contends that Plaintiff has failed to show that any other employees received different or preferential treatment. Finally, as to all of the claims, Defendant contends that even if Plaintiff could establish a prima facie case, Plaintiff has presented a legitimate, non-discriminatory reason for its actions, which Plaintiff has not shown to be pretext for discrimination or retaliation. The Court will consider these contentions below.

## II. ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete

5

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The Court is not "'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quoting Schuylkill & Dauphin Improvement & R.R. Co. v. Munson, 81 U.S. (14 Wall.) 442, 448, 20 L. Ed. 867, 872 (1872)).

In considering a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, in this case, Plaintiff, and accord that party the benefit of all reasonable inferences. Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). Moreover, the Court should not grant a motion for summary judgment "'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)). Nevertheless, a mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. There must be evidence "on which the jury could reasonably find for the plaintiff." Id. With this standard in mind, the Court must evaluate the merits of Plaintiff's race discrimination and retaliation claim to determine whether summary judgment in

favor of Defendant is proper in the present case.

B. Title VII Discrimination and Retaliation

Title VII prohibits the United States Postal Service from discriminating against its employees on the basis of race in its personnel actions. See § 42 U.S.C. 2000e-16. Regardless of the type of evidence offered, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004). The judicially-created scheme of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), requires that Plaintiffs first establish a prima facie case of discrimination. Hill, 354 F.3d at 285. To demonstrate a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) an adverse employment action occurred, (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action, and (4) similarly-situated employees outside his protected class received more favorable treatment. See McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in a protected activity; (2) the employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. Price v.

Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Once a plaintiff has established his prima facie case, the defendant must respond with evidence that it acted with a legitimate, nondiscriminatory purpose. McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824. If the defendant meets this burden of production, the presumption of discrimination created by the prima facie case vanishes, requiring the plaintiff to prove that the defendant's proffered reason is a pretext for discrimination in order to recover. Id. at 804, 93 S. Ct. at 1825.[1]

In the present case, with respect to the invoice for $319.15, Plaintiff has failed to present any evidence to establish that any similarly-situated employees outside his protected class were treated differently than Plaintiff. Although Plaintiff contends that Ms. Whatley did not have to pay her invoice, Plaintiff has failed to establish that Ms. Whatley's invoice was in any way similar to his invoice. Moreover, Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's invoice, based on the Memorandum of Understanding with the National Rural Letter Carriers' Association and the resulting recalculation of pay. Defendant has also provided a

---

[1] In light of Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), Plaintiffs are no longer required to show pretext *plus* some additional evidence of discrimination. Id. at 148, 120 S. Ct. at 2109. In other words, the Court may infer the ultimate fact of discrimination merely from the falsity of Defendant's proffered explanation. Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000). In addition, under the Supreme Court's holding in Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), Plaintiffs may instead offer evidence to support a finding that Defendant's reason, "while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citing Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

8

legitimate, non-discriminatory reason for the different handling of Ms. Whatley's invoice, specifically, that Ms. Whatley's invoice was not pursuant to the Memorandum of Understanding, but was a result of a local administrative error. Plaintiff has not submitted any evidence to show that Defendant's proffered explanations are false. Therefore, the Court concludes that summary judgment should be granted with respect to Plaintiff's claim related to the invoice.[2]

Plaintiff next contends that the failure to add new stops to his route was race discrimination in violation of Title VII. However, Plaintiff has not presented any evidence to establish that any other employees had their routes adjusted more quickly than Plaintiff, or that his supervisors failed to follow post office policies for adjusting his route. Thus, there is no evidence that any other similarly-situated employees outside Plaintiff's protected class received any different treatment regarding route adjustments. Moreover, Defendants have presented legitimate, non-discriminatory explanations for the time it took to adjust Plaintiff's route, and have presented evidence to establish that no other employees had their routes adjusted more quickly than Plaintiff. Plaintiff has failed to present any evidence to show that these explanations are false or were pretext for discrimination or retaliation. Therefore, the Court concludes that summary judgment is appropriately granted with respect to this claim.[3]

---

[2] Because the Court reaches this conclusion, the Court need not reach Defendant's additional argument that Plaintiff's claims related to the invoice are barred for failure to exhaust administrative remedies.

[3] Again, the Court notes that having reached this conclusion, the Court need not consider Defendant's alternative argument that Plaintiff may have failed to exhaust his administrative remedies with respect to at least some of his route adjustment claims.

However, with respect to Plaintiff's claim of retaliation following his October 11, 2001 EEO charge, the Court finds that genuine issues of material fact exist with respect to this claim, particularly as to Plaintiff's allegation that he was required to regularly work on his Saturday relief day for over six months in retaliation for filing an EEO complaint. Because the parties have consented to a bench trial, the Court will reserve any further rulings with respect to this claim for trial, and will allow the parties to present their claims and defenses on this issue at trial.

With respect to any potential damages for this remaining claim, the Court notes that punitive damages are not available in a Title VII suit against the federal government, including suits against the Postmaster General. See, e.g., Gibson v. Henderson, 129 F. Supp. 2d 890, 904 (M.D.N.C. 2001). Therefore, to the extent Plaintiff may allege a claim for punitive damages, that claim is dismissed. In addition, Title VII is the exclusive judicial remedy for claims of discrimination in federal employment, and Plaintiff's claims pursuant to 42 U.S.C. § 1981 will also be dismissed. See Brown v. General Servs. Admin., 425 U.S. 820, 835, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976); see also Bond v. Potter, 348 F. Supp. 2d 525 (M.D.N.C. 2004).

III. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Document #18] will be GRANTED with respect to: (1) Plaintiff's claims regarding the December 20, 2000 postal service invoice; (2) Plaintiff's claims regarding the alleged delay in adjusting his routes; (3) Plaintiff's claims pursuant to 42 U.S.C. § 1981; and (4) Plaintiff's claims for punitive damages, and all of those claims will be dismissed with prejudice. However, Defendant's Motion for

Summary Judgment [Document #18] will be DENIED with respect to Plaintiff's claim of retaliation following his October 11, 2001 EEO charge, particularly as to Plaintiff's allegation that he was required to regularly work on his Saturday relief day for over six months in retaliation for filing an EEO complaint. The Court will resolve any outstanding issues or defenses with respect to this retaliation claim at the bench trial in this case.

Given these rulings, the Court will direct the parties to file supplemental trial briefs and proposed findings of fact and conclusions of law limited to the remaining retaliation claim by April 3, 2006. This case will be scheduled for a bench trial beginning Thursday, April 6, 2006 at 9:30 a.m.

An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 28th day of March, 2006.

_____
United States District Judge